UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| **United States of America,** | ) |
| | ) No. 2:15-cr-00986-DGC-1 |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) Phoenix, Arizona |
| **Murray John Lawson,** | ) June 8, 2016 |
| | ) 10:31 a.m. |
| Defendant. | ) |
| | ) |

**BEFORE:  THE HONORABLE JOHN Z. BOYLE, MAGISTRATE JUDGE**

**TRANSCRIPT OF PROCEEDINGS**

**PLEA HEARING**

Transcriptionist:
**Andrea K. Bluedorn**
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 34
Phoenix, Arizona 85003-2151
(602) 322-7245

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                      **A P P E A R A N C E S**

2

3    For the Government:
         U.S. ATTORNEY'S OFFICE-PHOENIX, AZ
         By:  **Raymond K. Woo, Esq.**
4        2 Renaissance Square
         40 N Central Avenue, Ste. 1800
5        Phoenix, AZ 85004-4408

6    For the Defendant:
         PARK LAW OFFICE PLC
7        By:  **James Sun Park, Esq.**
         P.O. Box 30401
8        Phoenix, AZ 85046

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        **P R O C E E D I N G S**

2

3              COURTROOM DEPUTY:  All rise

4              THE COURT:  Thank you.  Please be seated.

5              COURTROOM DEPUTY:  Criminal docket 15-986, United

6    States of America versus Murray John Lawson.  On for change of

7    plea hearing.

8              MR. WOO:  Raymond Woo for the Government.  Good

9    morning.  Seated with the government is Kyle (inaudible) from

10   the FBI.

11             THE COURT:  Good morning.  Good morning.

12             UNIDENTIFIED SPEAKER:  Good morning, sir.

13             MR. PARK:  Good morning, Judge.  Jim Park on behalf of

14   Mr. Lawson.  He is present, out of custody.

15             THE COURT:  All right.  Good morning.  Good morning,

16   Mr. Lawson.

17             THE DEFENDANT:  Good morning.

18             THE COURT:  We're here for your change of plea.

19   Before we do that, we need to place you under oath.  The

20   importance of your oath is that you answer all questions

21   honestly.  If you do not do that, the Government can prosecute

22   you for the crimes of perjury and false statement.  Do you

23   understand?

24             THE DEFENDANT:  I understand.

25             THE COURT:  Okay.

1          COURTROOM DEPUTY:  Please raise your right hand.  Do

2     you swear or affirm that the statements you're about to give

3     the court in the matter now pending before it shall be the

4     truth, the whole truth, and nothing but the truth?

5          THE DEFENDANT:  I do.

6          COURTROOM DEPUTY:  Thank you.

7          THE COURT:  I'll ask you many questions.  If you do

8     not understand one, just let me know.  I can explain it or

9     rephrase it.  You can always talk to Mr. Park if you need a

10    minute.  Most important thing is you just understand everything

11    we talk about.

12          Let me begin with this form you've signed.  Judge

13    Campbell is the district judge assigned to your case.  You have

14    the right to have him take your plea, but, instead, you can

15    allow me, a magistrate judge, to take your pleas and recommend

16    Judge Campbell accept it.  Do you agree to proceed this way?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Okay.  What is your full name?

19          THE DEFENDANT:  Murray John Lawson.

20          THE COURT:  How old are you?

21          THE DEFENDANT:  Sixty-five.

22          THE COURT:  How far did you go in school?

23          THE DEFENDANT:  I have a post doctorate degree.

24          THE COURT:  All right.  When you spoke with Mr. Park

25    about your case, your choices, did you understand everything

1    you talked about?

2              THE DEFENDANT:  Yes, I do.

3              THE COURT:  All right.  In the last two days, have you

4    had any medication, alcohol, or drugs of any kind?

5              THE DEFENDANT:  No, sir.

6              THE COURT:  All right.  Mr. Park, do you believe Mr.

7    Lawson is competent to enter a plea?

8              MR. PARK:  I do, Judge.

9              THE COURT:  Did you review the indictment and the

10   charges and the evidence with him?

11             MR. PARK:  That is correct.

12             THE COURT:  Okay.  Any problems communicating?

13             MR. PARK:  No.  He's fluent in the English language.

14   And, as he stated, he is a chiropractor.

15             THE COURT:  Sure.  That was sort of designed, Mr.

16   Lawson, to make sure you, number one, have had enough time to

17   consider your choices.  Have you had enough time?

18             THE DEFENDANT:  Yes.

19             THE COURT:  All right.  And are you satisfied with the

20   work Mr. Park has done for you?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Okay.  Is anyone forcing you or

23   threatening you to make you enter into the plea?

24             THE DEFENDANT:  No, sir.

25             THE COURT:  All right.  It's important that all the

1   promises you have in your case are written down.  If they're

2   not written down, they have no value.  Are all of your

3   agreements written in this plea document?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Okay.  We'll go through them.  I just want

6   to make sure they are written down.  This also had been signed

7   on page 8, there's a signature; is that your signature?

8           THE DEFENDANT:  Uh-huh.

9           THE COURT:  Yes.

10          THE DEFENDANT:  Yes.

11          THE COURT:  Did you review the entire agreement with

12  Mr. Park before you signed it?

13          THE DEFENDANT:  Yes, we have.

14          THE COURT:  Okay.  You're pleading guilty to Count 30

15  of the indictment charging you with a violation of Title 18

16  U.S. Code Sections -- Section 1957(a), which is money

17  laundering, a Class C Felony offense.

18          Let me tell you the maximums under the law for the

19  offense, and then we'll talk about the specific agreements you

20  have in your case.  Under the law, this offense is punishable

21  by a maximum term of years.  The maximum fine is $250,000.  The

22  maximum term of supervised release is three years.  You're

23  required to pay a $100 special assessment.

24          Do you understand those maximums?

25          THE DEFENDANT:  Yes.

1           THE COURT:  Probation could also be imposed.  If
2  probation were imposed, it would be between one and five years.
3  Do you understand that?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  Okay.  So at sentencing Judge Campbell is
6  going to use a guideline book and chart to help determine your
7  sentence.  A copy of the chart is before you.  Did you review a
8  copy of that with Mr. Park?

9           THE DEFENDANT:  Yes, we have.

10          THE COURT:  Good.  Because the top of the chart is the
11  criminal history category.  If you have no prior convictions,
12  you can be in the lowest category of I.  If you have many
13  convictions, you could be the highest category of IV.  Do you
14  understand how the top of the chart works?

15          THE DEFENDANT:  Yes.

16          THE COURT:  On the left side is the offense level and
17  it starts with one and goes down.  The greater the number, the
18  more serious the offense level.  The offense level is
19  determined by the type of offense, some of the facts of the
20  offense.  There are things that can help reduce your level.
21  Acceptance of responsibility is one of those.  Pleading guilty
22  is part of that process, reductions or benefits to you.

23          Do you understand how the left side of the chart
24  works?

25          THE DEFENDANT:  Yes.  We went over it.

1          THE COURT:  So Judge Campbell will make those

2    decisions at sentencing.  It's an unknown right now.  In the

3    Federal System, you don't really know for certain what your

4    guideline range will be.

5          But what will happen is Judge Campbell will determine

6    your offense level and history category and then he'll draw a

7    line between them and where they meet in the middle of the

8    chart, that's known as your guideline range.  It's in terms of

9    months of recommended imprisonment.  And Judge Campbell has to

10   consider that range but he's not required to follow it.

11         So do you understand how the middle of the chart

12   works?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Okay.  Now Mr. Park might have given you

15   an estimate as to what he thinks your guideline range will be.

16   And it might be a very, very good estimate.  But, right now, it

17   can only be an estimate because Judge Campbell hasn't made

18   those decisions yet and he hasn't heard from you or the

19   Government.  So if the estimate you've been given is wrong, you

20   need to know you cannot withdraw from your agreement.  Does

21   that make sense?

22         THE DEFENDANT:  I understand.

23         THE COURT:  Okay.  Judge Campbell will also consider

24   factors like the nature of the offense, your history, the need

25   to protect the community, and the need for deterrence among

```
 1    sentencing factors.  So let's turn to your agreement now and
 2    review it.  And, again, if you have any questions, just let me
 3    know.
 4              I'm going to start on page 3.  This talks about
 5    agreements regarding your sentencing.  So the first is a
 6    stipulation.  And a stipulation is a promise Judge Campbell
 7    must follow.  If he doesn't follow a stipulation, you can
 8    withdraw from your agreement.
 9              And that's different than a recommendation.  A
10    recommendation is something the Government will make, but Judge
11    Campbell can reject your recommendations so that's how those
12    two things are different.  Do you understand the distinction?
13              THE DEFENDANT:  Yes.
14              THE COURT:  Okay.  Good.  It's important because the
15    first agreement you have is a stipulation that your sentence if
16    it's -- whatever it is -- will not exceed 12 months and one day
17    of imprisonment.  So probation is something that's on the
18    table.  It's not a promise, but the maximum term of
19    imprisonment is 12 months and one day.
20              Do you understand that?
21              THE DEFENDANT:  Yes.
22              THE COURT:  No one can tell you right now what will
23    happen.  Either of those are possibilities for Judge Campbell.
24              But section 2 there -- and I see you have a copy of it
25    and are following along, and that's a good thing, by the way.
```

1    Number 2 is a recommendation.  The Government will recommend

2    that you receive probation, but Judge Campbell, again, does not

3    have to follow a recommendation but they're obliged to make it.

4          Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Okay.  You're required to pay a lump

7    sum -- lump sum of $400,000 in restitution to the victim on or

8    before August 16 of 2016 and that will satisfy your restitution

9    obligation to the victim.  Do you understand you're required to

10   make that payment?

11         THE DEFENDANT:  Yes.

12         THE COURT:  All right.  Number 2, it says victim

13   here -- and do you understand who that is?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Okay.  Anything about restitution that you

16   need to place on the record?

17         MR. WOO:  I will place on the record that if for some

18   reason a sentencing date is set for August 16th of 2016, the

19   Government will move to continue the sentencing date.  And if

20   for some reason the payment is not made, the Government will

21   move to withdraw from the plea agreement at that point.

22         THE COURT:  Okay.  So that's an obligation that you

23   have.  If you don't fulfill the obligation, then the Government

24   can move to withdraw from the agreement.  Do you understand?

25         THE DEFENDANT:  I understand.

1          THE COURT:  Good.  You're required to make an

2    accounting of assets and financial response -- and your

3    finances.  You are obliged to hand over information regarding

4    your finances and any information regarding those.  Did you

5    review this entire paragraph with Mr. Park?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  Do you agree to abide by its

8    conditions?

9          THE DEFENDANT:  Yes, I do.

10          THE COURT:  Acceptance of responsibility I talked

11    about.  Pleading guilty is part of that process.  If you

12    qualify for acceptance of responsibility, the Government will

13    recommend that you get that reduction of two or three levels.

14    If you don't qualify, then your plea agreement will still

15    remain in force.  Do you understand they're bound to make that

16    recommendation?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Okay.  Any questions about your agreement?

19          THE DEFENDANT:  No.

20          THE COURT:  One thing that's not covered in your

21    agreement is the fact that this is a Federal Felony so you'll

22    have what we call a collateral consequence.  You will lose your

23    right to serve on a jury, to vote, and to possess firearms and

24    ammunition.  Did you discuss that with Mr. Park?

25          THE DEFENDANT:  Yes, we have.

1          THE COURT:  Okay.  Good.

2          MR. PARK:  Judge, actually, he's not a U.S. citizen.

3          THE COURT:  Okay.

4          MR. PARK:  So there's a provision in paragraph -- on

5    page 2 regarding collateral consequences as to -- pertains to

6    immigration.  He's a Canadian citizen.

7          THE COURT:  All right.  Well, thank you for letting me

8    know that.  So that is a different point, and thank you, Mr.

9    Park.  Is it your position, Mr. Park, that -- let me take a

10   look at the offense.

11         MR. PARK:  It's a prior deportable offense or removal

12   offense.

13         THE COURT:  I think this qualifies as an aggravated

14   felony.

15         MR. PARK:  It probably does.

16         THE COURT:  That's important for you because most

17   Federal Felonies are aggravated felonies.  And what that means,

18   according to the Ninth Circuit, is you're virtually certain to

19   be removed or deported from the United States.  Do you

20   understand that?

21         THE DEFENDANT:  I understand that.

22         THE COURT:  And you spoke with that -- with Mr. --

23   about that with Mr. Park?

24         THE DEFENDANT:  Yes, we have.

25         THE COURT:  Okay.  You get benefits from your

agreement but one of the things you're definitely giving up is

your right to appeal.  On page 4 going into page 5 of your

agreement, there's that section labeled waiver of defenses and

appeal rights.  Now, normally, you could appeal your sentence

to a higher court, the Ninth Circuit Court of Appeals or you

could attack your conviction and sentence in this court by

filing motions.  But you give up those rights.

     Did you review this entire paragraph line by line with

Mr. Park?

     THE DEFENDANT:  Yes, we have.

     THE COURT:  So one example of this is how this

guideline is calculated, your offense level, and your history

category.  That's one example of things you won't be allowed to

appeal or attack.  Do you understand?

     THE DEFENDANT:  Yes.

     THE COURT:  Do you agree to give up your appeal rights

under the terms listed here?

     THE DEFENDANT:  Yes, sir.

     THE COURT:  Okay.  I spoke with you about supervised

release.  In a way, it's like the idea of parole.  It's

something that happens after any term of imprisonment if it's

imposed.  Probation is its own sentence.  What you need to know

is if you are on supervision and you violate the terms of that

supervision, then you can be brought back to court.

     For probation, you could be subject to the maximum

1    term of imprisonment.  For a violation of supervised release,

2    it would be up to two years of imprisonment.  And of course

3    there would be a hearing and there would have to be a

4    violation.  But you understand the importance of probation and

5    supervised release?

6             THE DEFENDANT:  Yes.

7             THE COURT:  Okay.  I understand you're pleading guilty

8    but you're giving up rights by doing that so let me explain

9    them to you to make sure you understand them.  You have the

10   right to maintain a plea of not guilty.  No one can force you

11   to plead guilty and you have the right to a jury trial.  Do you

12   understand those rights?

13            THE DEFENDANT:  Yes, I do.

14            THE COURT:  At that trial, you would be present in

15   court.  You would help select a jury of 12 people who would

16   decide the facts of your case.  You would be presumed innocent

17   under the law, and you'd be represented by counsel throughout

18   the trial.

19            Do you understand those rights?

20            THE DEFENDANT:  I understand.

21            THE COURT:  Mr. Park would work on your behalf for the

22   trial.  He would confront and cross examine witnesses on your

23   behalf.  He'd challenge evidence.

24            At the trial, you could present evidence if you wanted

25   to.  You don't have to do that.  You don't have to prove a

1    thing in a trial.  The Government has the only burden of proof.

2    But you could use the power of court subpoena to compel

3    witnesses and evidence.

4              Do you understand all of those rights?

5              THE DEFENDANT:  Yes, I do.

6              THE COURT:  You could testify at the trial if you

7    wanted to, but you would never have to do that.  You could

8    remain silent through the whole trial.  Your silence could

9    never be held against you.  And you could only be found guilty

10   if the Government proved its case beyond a reasonable doubt.

11   And all 12 jurors would have to agree the Government had met

12   that high burden.  Do you understand that as well?

13             THE DEFENDANT:  Yes, I do.

14             THE COURT:  By pleading guilty, there's no trial.

15   Instead, the next time you're in court, it would be for a

16   sentencing before Judge Campbell.

17             Do you understand that?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Okay.  Do you agree to give up your right

20   to a jury trial?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  I'm going to turn to your agreement now.

23   This offense requires the Government to prove certain things

24   and they're listed on page 6.  It requires the Government prove

25   that on or about October 25, 2011, in Arizona, you knowingly

1    engaged or attempted to engage in a monetary transaction.  You

2    knew the transaction involved criminally derived property that

3    had a value of greater than $10,000, the property was, in fact,

4    derived from a wire fraud scheme, and the transaction occurred

5    in the United States.

6            And a monetary transaction, something typically that

7    affects interstate commerce, which I think it could --

8    international commerce -- but the facts of this case indicate

9    interstate commerce.  So do you understand the elements of the

10   offense?

11           THE DEFENDANT:  Yes, I do, sir.

12           THE COURT:  Okay.  There are facts that are listed

13   here so I'll just read them to you.  At the end, I'll ask you

14   if you agree the facts are true.  The agreement reads that

15   beginning sometime in 2008 and continuing through August 2012,

16   you engaged in a scheme to defraud RF, the victim, by making

17   material false and fraudulent representations concerning the

18   trading of foreign currencies made on behalf of RF and the

19   profitability of those trades.

20           You obtained funds from RF with the false

21   representations that you would and did invest RF's monies by

22   trading foreign currencies, that your foreign currency trading

23   yielded significant profits for the victim, that you only

24   charged a small management fee to the victim, and that RF's

25   monies would be readily accessible to RF.  Based on those

1    representations, RF paid you $480,000 in 2011.

2              On October 25th of 2011, you wired $26,875.16 to your

3    Heritage bank account in the United States.  You were aware

4    that these funds were derived from your wire fraud scheme

5    against RF, and this was a monetary transaction that affected

6    interstate or foreign commerce.

7              Did you hear the facts that I read?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Do you agree those facts are true?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  I also added a description that this

12   affected interstate or foreign commerce.  So do you agree with

13   that as well?

14             THE DEFENDANT:  I will.

15             THE COURT:  Okay.  Mr. Park, any additions or

16   corrections?

17             MR. PARK:  No, Judge.

18             THE COURT:  From the Government?

19             MR. WOO:  No, Your Honor.  Thank you.

20             THE COURT:  The Government avow can prove this case?

21             MR. WOO:  I can.

22             THE COURT:  All right.  So, Mr. Lawson, I've asked you

23   many questions.  Have you understood them all?

24             THE DEFENDANT:  No, I'm fine.

25             THE COURT:  All right.  You know, I started at the

1    beginning asking you -- and telling you as well -- that it's

2    important we understand, both of us, everything we talk about.

3    Have you understood everything we've talked about?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Okay.  You have a very experienced

6    attorney.  It sounds like you're very well prepared as well.

7    Do you have any questions for me though about this --

8            THE DEFENDANT:  Not at this time.

9            THE COURT:  -- sentencing or proceeding?

10           THE DEFENDANT:  No, sir.

11           THE COURT:  All right.  Release conditions will remain

12   the same?

13           MR. PARK:  That's correct, Your Honor.

14           THE COURT:  Okay.

15           MR. WOO:  I believe there's a -- there's a

16   supplemental report filed by pretrial services.

17           THE COURT:  Okay.

18           MR. WOO:  And that recommends same release conditions.

19           THE COURT:  Good.

20           Finally, Mr. Lawson, have all of your answers been

21   truthful today?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  Okay.  Regarding Count 30 of the

24   indictment charging you with money laundering as alleged in

25   that count, to that offense, how do you plead; guilty or not

UNITED STATES DISTRICT COURT

1    guilty?

2                THE DEFENDANT:  Guilty.

3                THE COURT:  I find you've knowingly, intelligently,

4    and voluntarily entered a plea of guilty.  There's a factual

5    basis for your plea.  You clearly understand the plea and your

6    choices, and you're obviously competent to make the plea entry.

7                I'll recommend to Judge Campbell that he accept your

8    plea.  It's ordered a presentence report be prepared.  So, Mr.

9    Lawson, that sentencing date is August 22nd of this year at

10   4:30 p.m. before Judge Campbell.  That's August 22nd at 4:30

11   p.m. before Judge Campbell.

12               So August 22nd, that's your next court date.  That's

13   at 4:30.  It's in courtroom 603 in this courthouse.  Do you

14   understand that date?

15               THE DEFENDANT:  Yes, sir.

16               THE COURT:  All right.  Obviously your release

17   conditions require you to appear.  If you didn't, a warrant

18   could issue for your arrest.  We talked just briefly before

19   about the deportation consequences.  Again, you understand

20   those clearly?

21               THE DEFENDANT:  I do.

22               THE COURT:  Okay.  Anything else from the Government?

23               MR. WOO:  Your Honor, I will -- I apologize to the

24   Court for the typo on the front page.  Thank you.

25               THE COURT:  Oh, that's fine.  Mr. Park, anything else?

1            MR. PARK:  No, Your Honor.  Thank you.

2            THE COURT:  All right.  Thank you, all.  We're

3    adjourned.

4            MR. WOO:  Thank you.

5            MR. PARK:  Thank you.

6

7        (Proceedings conclude at 10:47 a.m.)

8                        ---oOo---

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1

2

3

4

5                   **C E R T I F I C A T E**

6

7          I, ANDREA K. BLUEDORN, court-approved transcriber,

8   certify that the foregoing is a correct transcript from the

9   official electronic sound recording of the proceedings in the

10  above-entitled matter.

11

12         DATED at Phoenix, Arizona, this 21st day of February,

13  2025.

14

15

16

17

18                              /s/ Andrea K. Bluedorn
                                Andrea K. Bluedorn

19

20

21

22

23

24

25